IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AETNA, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-2172 |
| | : | |
| WHATLEY KALLAS, LLP, et al. | : | |

## **MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                    **March 29, 2019**

Plaintiff Aetna, Inc. (Aetna) brings this action against Defendants Whatley Kallas, LLP, and Whatley Kallas, LLC (collectively, Whatley), and Defendant Consumer Watchdog (Watchdog), seeking indemnity, contribution, declaratory relief, and damages for liability Aetna has incurred and continues to incur, allegedly as a result of Whatley and Watchdog's acts, errors, omissions, and negligence in overseeing the settlement administrator for two putative class action lawsuits Whatley and Watchdog filed against Aetna in California and Florida. As part of the settlement of the California and Florida actions, settlement administrator, Kurtzman Carson Consultants' (Kurtzman), mailed a notice to putative class members around the country which improperly allowed the confidential HIV-related information of Aetna members to be viewed by third parties. The liabilities for which Aetna seeks indemnification include, but are not limited to, the $17,162,000 settlement in *Beckett v. Aetna Inc.*, a nationwide class action filed against Aetna in this district on behalf of Aetna members who received the notice from Kurtzman. Whatley and Watchdog have moved to dismiss Aetna's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because the Court lacks personal jurisdiction over

Whatley and Watchdog, the motions will be granted. Rather than dismiss this action, the Court will transfer it to the United States District Court for the Central District of California.[1]

**BACKGROUND**[2]

In December 2014 and December 2015, Whatley and Watchdog filed two putative class actions against Aetna and certain of its subsidiaries and affiliates in federal district court in California and Florida (the *Doe* lawsuits). *See* Compl. ¶ 13. The *Doe* lawsuits challenged an Aetna policy requiring members of its health plans to obtain their HIV medications by mail, rather than at retail pharmacies. Whatley and Watchdog represented four individuals named as John Doe plaintiffs in the *Doe* lawsuits—none of whom were Pennsylvania residents. *See* Mansfield Decl. ¶ 4; Flanagan Decl. ¶ 10.

Whatley is a law firm organized as a Colorado limited liability partnership with offices located in Colorado, Alabama, New York, Georgia, Massachusetts, California, and New Hampshire. *See* Whatley Decl. ¶¶ 3, 5. On its website, Whatley lists itself as a "nationwide leader" in litigation. Although Whatley attorneys have been admitted pro hac vice in Pennsylvania and represented Pennsylvania parties on occasion, *see* Adams Decl. ¶¶ 10, 11, Whatley has never

---

[1] Whatley and Watchdog have also moved to dismiss the Complaint for improper venue and failure to state a claim upon which relief can be granted or, in the alternative, to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). Because the Court lacks personal jurisdiction over Whatley and Watchdog, the Court need not address these arguments.

[2] Where, as here, the court does not hold an evidentiary hearing, the plaintiff "need only establish a prima facie case of personal jurisdiction and . . . [is] entitled to have [its] allegations taken as true and all factual disputes drawn in [its] favor." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). Once the defense of personal jurisdiction has been raised, "the plaintiff must satisfy its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700 (3d Cir. 1982)).

maintained an office in Pennsylvania, *see* Whatley Decl. ¶ 6. Whatley attorney Alan Mansfield represented the named plaintiffs in the *Doe* lawsuits from Whatley's San Diego, California office. *See* Mansfield Decl. ¶¶ 4, 10, 13, 14.

Watchdog is a non-profit, consumer advocacy organization headquartered in Los Angeles, California, with a second office in Washington, D.C. *See* Flanagan Decl. ¶¶ 3, 6. Like Whatley, Watchdog has never maintained an office in Pennsylvania. *See id.* ¶ 7. Watchdog has appeared as counsel in Pennsylvania only once, approximately nineteen years ago, in a case before the Third Circuit Court of Appeals. *See id.* ¶ 8. In addition, Watchdog has served as counsel in nationwide class action lawsuits filed across the country approximately once a year for the past twelve years. *See* Supp. Adams Decl. ¶ 3 & Ex. B. Watchdog attorney Jerry Flanagan represented the named plaintiffs in the *Doe* lawsuits from Watchdog's Los Angeles, California office. *See* Flanagan Decl. ¶ 12-15.

Aetna is a nationwide health insurer organized as Pennsylvania corporation with its principal place of business in Connecticut. In connection with the *Doe* lawsuits, Aetna was represented by the law firm of Gibson, Dunn & Crutcher (Gibson Dunn). Gibson Dunn attorneys Heather Richardson and Richard Doren served as counsel for Aetna in the *Doe* lawsuits from Gibson Dunn's Los Angeles, California office. *See* Richardson Decl. ¶ 2 & Exs. 5, 8.

On February 14, 2017, the *Doe* lawsuits settled through private mediations that occurred in California and Florida. *See* Compl. ¶ 13. The *Doe* lawsuits did not settle on a class-wide basis. *See* Mansfield Decl. ¶ 9 & Ex. B-1; Richardson Decl. Ex A. Rather, the settlement was among the four individuals named as John Doe plaintiffs and Aetna and its affiliates. Pursuant to the settlement agreement, Aetna agreed to pay the named plaintiffs' $24,000 collectively, *see* Richardson Decl. Ex. 1, at 12, implement certain changes to its HIV prescription drug policy, and

notify putative class members regarding those changes, *see* Compl. ¶ 14. Aetna further agreed to reimburse putative class members for certain out-of-pocket costs for obtaining HIV medications, *see id.*, as well as pay the costs of implementing the settlement. *See* Richardson Decl. Ex. 1, at 11.

At the recommendation of Whatley and Watchdog, the parties engaged Kurtzman to process the reimbursements and mail the notices regarding the changes to Aetna's HIV prescription drug policy.[3] *See id.* ¶ 7. Kurtzman is a class action settlement administrator operating as a Delaware limited liability company. *See* Compl. ¶ 16. Pursuant to the settlement agreement, Kurtzman was to send two separate notices: one notifying putative class members of an opportunity to be reimbursed for out-of-pocket expenses relating to their HIV medication (the Settlement Notice), and another notifying putative class members of changes to Aetna's HIV prescription drug policy (the Member Notice). *See id.* ¶ 14.

On May 10, 2017, Kurtzman addressed a draft proposal and estimate for its services to Whatley and Gibson Dunn. *See* Mansfield Decl. Ex., B-2 at 8. The draft proposal identified Whatley as the client and included signature blocks for Kurtzman and Whatley. *See id.* The proposal provided Kurtzman would use #10 *window* envelopes to mail the Settlement Notice and #10 envelopes to send the Member Notice. *See id.* at 6. Richardson approved the draft proposal and provided additional comments regarding certain sections of the draft proposal. *See id.* Ex. B-3. On May 23, 2017, Kurtzman sent a revised proposal to Whatley and Gibson Dunn addressing Richardson's concerns. *See id.* Ex. B-4. The revised proposal was never signed by Kurtzman,

---

[3] Whatley and Watchdog deny recommending that Kurtzman be used as the settlement administrator. However, at this stage, Aetna is "entitled to have [its] allegations taken as true and all factual disputes drawn in [its] favor." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d at 97).

4

Whatley, Watchdog, Gibson Dunn, or Aetna. *See* Mansfield Decl. ¶ 18 & Exs. B-2, B-3; Richardson Decl. ¶ 8 & Ex. 2.

Beginning in June 2017, through emails sent in California, Mansfield and Flanagan worked with Kurtzman to edit the formatting and font of the Notices, as well as the "Frequently Asked Questions" (FAQ) portion of the Notices. *See* Richardson Decl. ¶ 17 & Exs. 6, 7. None of the parties, however, reviewed the final proofs of the envelopes Kurtzman planned to use to send the Notices. *See* Compl. ¶ 27; Mansfield Decl. ¶ 25; Flanagan Decl. ¶ 26. Thereafter, Aetna directly provided Kurtzman with the confidential HIV-related information of the putative class member who would receive the Notices. *See* Tr. at 43, Feb. 6, 2019; Richardson Decl. Ex. 5. On July 28, 2017, Kurtzman mailed the Notices. Kurtzman mailed the Settlement Notice in #10 window envelopes as provided in the revised proposal. However, contrary to its statement in the revised proposal, Kurtzman also mailed the Member Notice in #10 *window* envelopes. Out of the 12,000 total Member Notices, nearly 700 were sent to Aetna members in Pennsylvania. *See* Compl. ¶ 28.

After Kurtzman sent the Notices, Aetna began receiving calls and emails from Aetna members who received the Member Notice, stating the words "HIV Medications" could be seen through the envelope's window and the mailing thus disclosed their confidential HIV-related information. *See id.* ¶ 29. On August 1, 2017, Doren sent Whatley and Watchdog a letter notifying them that Kurtzman has used window envelopes for the Member Notice and that Aetna may have a potential claim against them. *See* Richardson Decl. Ex. 8.

Shortly thereafter, Aetna members began to sue Aetna for wrongly disclosing their confidential HIV-related information through the Member Notice. *See* Compl. ¶ 30. On August 28, 2017, Andrew Beckett, a Pennsylvania resident and Aetna member who received the Member Notice, filed a putative nationwide class action lawsuit against Aetna in this Court (the *Beckett*

5

action), alleging the use of window envelopes allowed unauthorized persons to view the recipients' confidential HIV-related information. *See id.* On September 29, 2017, Aetna initiated a program providing counseling and emergency financial assistance to affected members. *See id.* ¶ 31. Six additional class action lawsuits were filed against Aetna relating to the Member Notice in federal courts in California, Connecticut, and Missouri, as well as in California state court. *See id.* ¶ 32. Five of the cases were voluntarily joined with the *Beckett* action while the sixth, the Missouri action, was consolidated on Aetna's motion. *See id.* ¶ 33.

The consolidated *Beckett* action settled on a class-wide basis. *See id.* ¶ 34. On January 17, 2018, plaintiffs in the consolidated *Beckett* action moved for preliminary approval of the settlement. As part of the settlement, Aetna agreed to pay $17,162,000 to resolve all claims, and preserved its rights to pursue all claims against non-parties to the settlement. *See id.* On May 10, 2018, this Court granted preliminary approval of the settlement, *see id.*, and, on October 15, 2018, the Court granted final approval of the settlement.

Aetna's potential liability stemming from the Member Notice, however, did not end with the consolidated *Beckett* action. Three additional individual lawsuits relating to the Member Notice have also been filed against Aetna in California state court and in federal court in New Jersey. *See id.* ¶ 35 Aetna is also facing investigations by several state attorneys general as well as the United States Department of Health and Human Services, which may lead to additional civil penalties and fines. *See id.* ¶ 37. Aetna has already paid $1,000,000 in fines relating to the investigations. *See id.* ¶ 38.

After settling the consolidated *Beckett* action, Aetna began seeking indemnity for the damages it sustained as a result of the Member Notice. On February 5, 2018, Aetna filed suit against Kurtzman in this Court seeking, inter alia, indemnity, contribution, reimbursement, and

damages. *See Aetna v. Kurtzman Carson Consultants*, No. 18-470 (E.D. Pa. filed Feb. 5, 2018). On May 23, 2018, Aetna filed the instant action against Whatley and Watchdog in this Court and filed an identical action against Whatley and Watchdog in the Superior Court of Los Angeles County (the California Action). Mansfield Decl. Ex. B-6. In both actions, Aetna alleges Whatley and Watchdog worked with and/or supervised Kurtzman by (1) reviewing proofs of the Notices, including the final proofs; (2) exchanging multiple emails regarding the formatting of the letters; (3) reviewing and editing proposed "Frequently Asked Questions" for administration of the settlement claims; (4) selecting the specific date of mailing the Notices; and (5) confirming with Kurtzman it had mailed the Notices. *See* Compl. ¶ 26; Mansfield Decl. Ex. B-6, at 6.

On August 30, 2018, Superior Court Judge Richard E. Rico dismissed the California Action on Whatley and Watchdog's motion pursuant to California's Strategic Lawsuits Against Public Participation statute, Cal. Civil Procedure Code § 425.16, which prohibits opposing counsel from suing prevailing counsel in an effort to chill a litigant's rights. Watchdog Mot. to Dismiss Ex. B. Aetna has appealed Judge Rico's decision to the California Court of Appeal. In the instant action, on August 20, 2018, and September 26, 2018, Whatley and Watchdog moved to dismiss the Complaint for lack of personal jurisdiction.[4] The motions are now ripe for disposition.

**DISCUSSION**

When personal jurisdiction is challenged, "the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). A plaintiff

---

[4] Whatley has also moved to stay this case pending resolution of the appeal in the California Action and to strike certain portions of the declarations attached to Aetna's response to its motion to dismiss. However, because the Court lacks personal jurisdiction over Whatley and Watchdog and because the portions of the declarations Whatley seeks to strike relate to the merits of the case or are irrelevant to the issue of personal jurisdiction, these motions need not be addressed and will be dismissed as moot.

meets its burden to establish a prima facie case of personal jurisdiction by demonstrating "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation omitted).

"[A] District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor*, 496 F.3d at 316 (citing Fed. R. Civ. P. 4(k)(1)(A)). Pennsylvania's long-arm statute permits the exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b). Thus, for the Court to have jurisdiction over Whatley and Watchdog, they must have "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316–17 (alterations in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two theories of personal jurisdiction: (1) general jurisdiction, which a court may exercise to hear "any and all claims" against a defendant when the defendant's affiliations with the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); and (2) specific jurisdiction, which requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation," *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919) (alteration in original).

For general jurisdiction to exist, "the contacts between the defendant and the forum need not be specifically related to the underlying cause of action," *Pinker v. Roche Holdings Ltd.*, 292

F.3d 361, 368 n.1 (3d Cir. 2002), but "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," *Daimler*, 571 U.S. at 137. For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile," *id.* (quoting *Goodyear*, 564 U.S. at 919-20), and for a corporation, the paradigm fora are its "place of incorporation and principal place of business," *id.*

Aetna does not argue Whatley and Watchdog are subject to general jurisdiction in Pennsylvania. It is apparent they are not as (1) neither entity is domiciled in Pennsylvania, and (2) there are no "exceptional circumstances" rendering them "essentially at home" in Pennsylvania. *See id.* at 117. Accordingly, the Court lacks general jurisdiction over Whatley and Watchdog.

As a result, the Court may only exercise personal jurisdiction over Whatley and Watchdog if specific jurisdiction exists. For specific jurisdiction to exist: (1) "the defendant must have purposefully directed [its] activities at the forum"; (2) "the litigation must arise out of or relate to at least one of those activities"; and (3) the exercise of jurisdiction must "otherwise comport[ ] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (first alteration in original) (internal quotation marks and citations omitted). The first prong of the specific jurisdiction analysis requires the plaintiff to show the defendant "purposefully availed itself of the privilege of conducting activities within the forum," *id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), thus ensuring "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

In arguing Whatley and Watchdog are subject to specific jurisdiction in Pennsylvania, Aetna blurs the line between general and specific jurisdiction in regard to what contacts should be

9

considered in the specific jurisdiction analysis. Aetna construes the universe of relevant contacts broadly to encompass any contacts Whatley or Watchdog have ever had with Pennsylvania relating to legal practice. To this end, Aetna relies on Whatley's previous pro hac vice admissions in Pennsylvania courts, representation of Pennsylvania parties, and promotion of the firm as a "nationwide leader" in litigation. For Watchdog, Aetna relies on Watchdog's practice of regularly serving as counsel in nationwide class action lawsuits. Aetna's reliance on these contacts, however, is misguided because the instant litigation does "not arise out of or relate to" any of these activities, and these contacts must therefore be disregarded.[5] *O'Connor*, 496 F.3d at 317 (stating the instant litigation must "arise out of or relate to" the alleged contacts).

Turning to the relevant contacts, i.e., Whatley and Watchdog's conduct relating to the settlement of the *Doe* lawsuits and the implementation of that settlement, Whatley and Watchdog did not purposefully direct their conduct into Pennsylvania. Aetna asserts Whatley and Watchdog reviewed proofs of the Notices; provided revisions to the font and formatting of FAQs included with the Notices; sent emails regarding the Notices; and inquired about when the Notices would be sent. *See* Compl. ¶ 26. However, these actions all occurred in California. None of these activities brought Whatley or Watchdog into direct, purposeful contact with Pennsylvania. On the contrary, Whatley and Watchdog's conduct was directed toward overseeing the settlement administration process occurring in California.

---

[5] In support of its expansive view of the contacts relevant to the specific jurisdiction analysis, Aetna cites a law review article in which the author advocates that courts should apply a "broader conception of the relatedness requirement" in legal malpractice cases and consider all "contacts encompass[ing] the same character or type of activity that caused injury to the [plaintiff]" in the specific jurisdiction analysis. Cassandra Burke Robertson, *Personal Jurisdiction in Legal Malpractice Litigation*, 6 St. Mary's J. Legal Mal. & Ethics 2, 26-27 (2016). The Court declines to apply this expansive theory of jurisdiction.

Further, there is no allegation Whatley or Watchdog knew their activities related to overseeing the settlement of the *Doe* lawsuits would touch Pennsylvania. As Aetna conceded at oral argument, it provided the confidential HIV-related information of its members directly to Kurtzman. *See* Tr. at 43. As a result, neither Whatley nor Watchdog had any information as to where the Member Notice would be sent or where putative class members resided. Even though it may have been foreseeable that putative class members would reside in Pennsylvania and receive the Member Notice there, foreseeability alone does not establish personal jurisdiction. *See Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008) ("[A]lthough [the defendant] certainly could have foreseen that students from Delaware, or any other state, might choose to participate in their distance learning program because the Web site is accessible to a nationwide (indeed, global) audience, this foreseeability alone cannot satisfy the purposeful availment requirement." (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980))); *see also Walden v. Fiore*, 571 U.S. 277, 289 (2014) (finding Nevada could not exercise personal jurisdiction over a Georgia police officer even though he "directed his [tortious] conduct at plaintiffs whom he knew had Nevada connections" because "no part of [his] conduct occurred in Nevada").

Moreover, Whatley and Watchdog are not alleged to have had any role in placing the Member Notice into the window envelopes or mailing the Member Notice. As a result, Whatley and Watchdog's conduct in overseeing the settlement of the *Doe* lawsuits is insufficient to establish purposeful availment. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1535 (10th Cir. 1996) (finding a Colorado accounting firm that performed an audit of a borrower's guarantor did not purposefully direct its activities at Michigan by consenting to use of its audit in guarantor's Securities and Exchange Commission filings, which could be relied upon by creditors in all fifty states, or based on the guarantor's submission of the audit to a lender in Michigan

11

without the law firm's knowledge); *cf., e.g.*, *Toussant v. Williams*, 62 F. Supp. 3d 417, 425 (E.D. Pa. 2014) (exercising personal jurisdiction over an out-of-state life coach who caused tortious harm within Pennsylvania where the coach *personally* emailed a faulty diagnosis to the plaintiff, knowing the plaintiff was in Pennsylvania).

Insofar as Aetna contends Whatley and Watchdog purposefully directed their conduct into Pennsylvania because they received additional fees for their role in overseeing the settlement administration, this argument is unpersuasive.[6] Whatley and Watchdog's receipt of additional fees for the settlement administration process does not change the specific jurisdiction analysis because the additional fees were not result of any activity by Whatley and Watchdog in Pennsylvania. Rather, Whatley and Watchdog's settlement administration activity occurred in California, where the settlement was being implemented.

Aetna further contends Whatley and Watchdog purposefully directed their conduct into Pennsylvania by sending a "letter bomb," i.e., the Member Notice, into Pennsylvania. *See* Tr. at 39, 41. In support of its argument, Aetna relies on *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773 (S.D. Miss. 2001). In *Internet Doorway*, the plaintiff, a local Mississippi internet service provider, alleged the defendant, a Texas individual, had personally falsified email headers to make it appear that a mass email advertising a pornographic website had been sent from the local Mississippi internet service provider. *See* 138 F. Supp. 2d at 779. The United States District Court

---

[6] On June 1, 2017, pursuant to the settlement agreement in the *Doe* lawsuits, the parties to that litigation participated in a "baseball" style arbitration to determine the amount of attorneys' fees to be awarded. At the arbitration, Whatley and Watchdog asked for an additional $65,375 attorneys' fees due to "the cost of completing [the] arbitration, working with the settlement administrator to oversee the notification and claims process, assisting individuals in completing claims forms, reviewing disputed claims with the settlement administrator, and monitoring compliance with the settlement." Richardson Decl. Ex. 3. The arbitrator ultimately awarded Whatley and Watchdog over $1 million in attorneys' fees for their role in the *Doe* lawsuits, which Aetna contends included the requested $65,375 fee increase. *See id.* ¶ 14.

for the Southern District of Mississippi found specific personal jurisdiction was proper because the defendant "had to have been aware that the e-mail would be received and opened in numerous fora, including Mississippi." *Id.*

*Internet Doorway*, however, is inapposite to this case. The defendant in *Internet Doorway* personally manipulated the email headers and sent the emails into Mississippi. *See id.* In contrast, here, Whatley and Watchdog's conduct is one step removed. As noted, Whatley and Watchdog had no hand in placing the Member Notice into the window envelopes or mailing the Member Notice. *See* Compl. ¶ 26. Aetna's "letter bomb" theory consequently provides no support for its specific jurisdiction argument.

Finally, to the extent Aetna asserts Whatley and Watchdog directed their conduct into Pennsylvania by filing a putative nationwide class action and thereby conscripting Pennsylvania citizens into a putative class for financial gain, this argument is also meritless. In support of this argument, Aetna notes that putative class counsel owes putative class members a fiduciary duty once the complaint is filed. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("[C]lass attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."). Aetna contends Whatley and Watchdog cannot leverage putative class members for gain "while also subjecting them to potential injuries arising from their breaches of duty" without expecting to be haled into Pennsylvania to answer for those breaches. Aetna Resp. in Opp'n to Whatley's Mot. 13. While Aetna is correct in asserting that putative class counsel owe putative class members a fiduciary duty, Aetna fails to provide any support for its argument that, by filing a putative class action, putative class counsel is subject to personal jurisdiction in any state in which a putative class member resides for claims made by persons other than putative class members. *See* Tr. at 39-40.

In any event, Aetna's theory of jurisdiction would effectively establish per se specific jurisdiction over putative class counsel in all fifty states once a putative class action is filed. Such a holding runs contrary to the notion of personal jurisdiction as a limit pursuant to the Due Process Clause, *see Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982) (noting personal jurisdiction "[r]epresents a restriction on judicial power"), and would wholly subvert the purposeful availment prong of the specific jurisdiction analysis. Therefore, Aetna has not shown that Whatley and Watchdog purposefully directed their conduct into Pennsylvania.[7]

Because Aetna has not shown that Whatley and Watchdog purposefully directed their activities into Pennsylvania, the Court need not address whether exercising jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. The Court, however, briefly notes that exercising jurisdiction would not satisfy this third prong of the specific jurisdiction test because (1) exercising jurisdiction would be burdensome on Whatley and Watchdog; (2) California has a greater interest in resolving this dispute as the pertinent actions occurred there; (3) many of the relevant witnesses and much of the evidence is located in California; and (4) Aetna can obtain effective relief in California as evidenced by its filing of the California Action. *See, e.g.*, *Halim v. Eagle Grp. Int'l, LLC*, No. 08-4312, 2008 WL 5377618, at *6 (E.D. Pa. Dec. 23, 2008) (holding the fairness factors did favor not exercising jurisdiction where (1) an undue burden would result from exercising jurisdiction as it would effectively subject

---

[7] Inasmuch as Aetna argues specific jurisdiction is proper under the more rigorous "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984), Aetna is mistaken. The *Calder* "effects test" only applies where the defendant committed an intentional tort, *see IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998), and, in this instance, Aetna has not alleged an intentional tort. While Aetna asserts, in its response to Whatley's motion to dismiss, that it is alleging Whatley and Watchdog breached a fiduciary duty, an intentional tort, this assertion is belied by the Complaint, which does not contain any counts alleging a breach of a fiduciary duty and never uses the term fiduciary. *See generally* Compl. Therefore, the *Calder* "effects test" does not apply.

defendant to suit in all fifty states; (2) Washington, D.C., not Pennsylvania, was the situs of the actions constituting the alleged fraud and negligence; (3) although Pennsylvania had an interest in protecting its residents, the fraudulent acts occurred in Washington, D.C., giving it a more substantial interest; and (4) the witnesses necessary to the case resided in Washington, D.C.). Therefore, the Court lacks specific jurisdiction over Whatley and Watchdog.

Finally, because the Court finds it lacks personal jurisdiction over Whatley and Watchdog, the Court must determine whether the proper remedy is to dismiss the action or transfer it to the Central District of California. If it serves the "interest of justice," a district court lacking personal jurisdiction may transfer a case to a district in which the case could have been originally brought. 28 U.S.C. § 1631; *see, e.g.*, *Island Steel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (recognizing a district court's authority to transfer a case if it lacks personal jurisdiction). In this case, because Whatley and Watchdog have conceded transfer to the Central District of California is proper if the Court finds it lacks personal jurisdiction, *see* Tr. at 35-36, the Central District of California is the location of the alleged misconduct, and the relevant witnesses and documentary evidence are located there, the Court finds transfer of the action to the Central District of California serves the interest of justice.

**CONCLUSION**

For the reasons set forth above, the Court will grant Whatley and Watchdog's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and transfer the action to the Central District of California pursuant to 28 U.S.C. § 1631.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.